## UNITED STATES COURT DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **William and Jane Goldring** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 18-10756** |
| | ) | |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | **JUDGE: _____** |
| **Defendant.** | ) | **MAGISTRATE JUDGE:** |
| | ) | |
| | | _____ |

## COMPLAINT

Plaintiffs, William and Jane Goldring, by and through the undersigned counsel, hereby bring this action against Defendant, the United States of America, and for their Complaint allege as follows.

## NATURE OF THE ACTION

1.      This is an action for the recovery of personal federal income taxes and interest paid by the Plaintiffs for the tax year ending December 31, 2010 (the "2010 Tax Year").

2.      The issue for the Court to resolve is the character of funds paid to Jane Goldring in 2010 by Sunbelt Beverage Corporation ("Sunbelt") as the result of a judgment issued by the Delaware Chancery Court in a stockholder lawsuit filed by Mrs. Goldring against Sunbelt.[1]

3.      Under the Internal Revenue Code ("I.R.C."), gain from the sale or disposition of a capital asset is taxed at a lower rate than ordinary income.  *See* I.R.C. §§ 1(h), 1222.

---

[1] The referenced stockholder lawsuit is *In re Sunbelt Beverage Corp. Shareholder Litigation*, Consol. Case No. 16089-CC (Del. Ch. Feb. 15, 2010).

4.      On February 15, 2010, the Delaware Chancery Court issued a Memorandum Opinion determining that Sunbelt had illegally taken Mrs. Goldring's shares of Sunbelt, a capital asset, in 1997 through the use of a "squeeze-out" merger. A copy of the Memorandum Opinion is attached as **Exhibit A** and incorporated by reference.

5.      In April 2010, Sunbelt made a payment of $40,789,124.50 to Mrs. Goldring to compensate her for the shares in Sunbelt that had been illegally taken from her.  In connection with this payment, Sunbelt issued a Form 1099-MISC, in which Sunbelt purported treated $14,536,383.28 as payment for stock.  Sunbelt also issued a Form 1099-INT, in which Sunbelt purported to treat $26,252,741.22 as payment of interest.

6.      When filing their joint federal income tax return, the Goldrings treated the entire $40,789,124.50 payment as income from the disposition of a capital asset (Mrs. Goldring's Sunbelt stock), which is taxed at the long-term capital gain rate.

7.      After an examination of the Goldrings' return for the 2010 Tax Year, the IRS concluded that $26,252,741 of the $40,789,124 payment from Sunbelt constituted "interest income" and should be taxed at the ordinary income rates.  On or about June 8, 2017, the Goldrings executed a Form 4089, in which they waived restrictions on the assessment of additional tax due for the 2010 Tax Year.  The additional taxes were then assessed and deemed paid by the IRS.  An administrative refund claim was filed, followed by this lawsuit.

8.      The entire payment by Sunbelt to Mrs. Goldring - as ordered by the Delaware Chancery Court - constituted monetary damages for a capital asset that was illegally taken by Sunbelt:  Mrs. Goldring's shares in Sunbelt.  The purpose of the payment was to make Mrs. Goldring whole for her 15% interest in Sunbelt and to act as a "fair" and "adequate" substitute

2

for a 15% interest in Sunbelt. Accordingly, the entire payment should be treated as long-term capital gain for tax purposes.

## JURISDICTION

9.     This Court has jurisdiction over this Complaint by reason of 26 U.S.C. § 7422(a) and 28 U.S.C § 1346(a)(1)

10.     Venue in proper in this court pursuant to 28 U.S.C. § 1396 because the Goldings reside in New Orleans, Louisiana.

## THE PARTIES

11.     William and Jane Goldring ("Plaintiffs") are individuals residing in New Orleans, Louisiana who timely filed their federal income return for the tax year ending December 31, 2010 as "married filing jointly."

12.     Defendant, United States of America, for all purposes relevant hereto, acted by and through the Internal Revenue Service ("IRS").

## PROCEDURAL BACKGROUND

13.     The Goldrings timely filed their federal income tax return for the tax year ending December 31, 2010 (the "2010 return").

14.     On their 2010 return, the Goldrings reported the full $40,789,124.50 received from Sunbelt as income from the sale of Mrs. Goldring's 120,000 shares of Sunbelt stock.

15.     When filing their 2010 return, the Goldrings made a payment of $7,200,000, resulting in an overpayment of $6,782,794, which was then applied to the Goldrings' 2011 tax liabilities.  For each year following the 2010 Tax Year, this overpayment of tax was applied to the Goldrings' account for the subsequent tax year.

16.     The IRS audited the Goldrings' 2010 return and determined that the $26,252,741 reported by Sunbelt as interest should have been taxed at ordinary income tax rates.

17.     On March 30, 2017, the IRS issued a notice of deficiency to the Goldrings asserting additional taxes due of $5,250,549.

18.     In June 2017, the Goldrings executed a Form 4089 Notice of Deficiency – Waiver, waiving the restrictions on assessment of additional amounts due for the 2010 Tax Year.

19.     On August 18, 2017, the IRS sent the Goldrings a Notice of Tax Due for the 2010 Tax Year showing that $4,246,848 of the total overpayment on account with the IRS had been assessed and paid against the Goldrings' tax liability for the 2010 Tax Year.

20.     Pursuant to 26 U.S.C. § 6532, on September 18, 2017, the Goldrings filed a claim for refund of $4,246,848, the amount that was assessed and paid on August 18, 2017, for the 2010 Tax Year (the "First Refund Claim").  A copy of the First Refund Claim is attached as **Exhibit B** and incorporated by reference.

21.     On or about November 6, 2017, the Goldrings paid an additional $1,526,859 in taxes and interest for the 2010 Tax Year, which was accomplished by the IRS transferring overpayments made by the Goldrings for their 2016 tax year and applying those overpayments to the 2010 Tax Year.  A copy of the IRS transcript demonstrating this payment is attached as **Exhibit C** and incorporated by reference.

22.     On March 16, 2018, the Goldrings timely filed a claim for refund of the additional $1,526,859 in taxes paid for the 2010 Tax Year on November 2017 (the "Second Refund Claim").  The Second Refund Claim also sought a refund of the amount requested in the First Refund Claim, or a total refund of $5,856,772.70.  A copy of the Second Refund Claim is attached as **Exhibit D** and incorporated by reference.

4

23.     Six months have passed since the filing of the Second Refund Claim.  Therefore, this Complaint is timely.  *See* I.R.C. § 7422, I.R.C. § 6532(a)(1).

## FACTUAL BACKGROUND

**A.      *Mrs. Goldring's Ownership of Sunbelt Stock and the Squeeze-Out Merger***

24.     In 1991, Mrs. Goldring acquired stock in Sunbelt in exchange for certain beverage distribution rights.

25.     By 1997, Mrs. Goldring held 120,000 shares of Sunbelt's stock, representing a 14.9% interest (sometimes referred to herein as a 15% interest).

26.     In 1997, Sunbelt was a privately-held Delaware corporation engaged in the business of wholesale distribution of wine and spirits.

27.     In the spring and summer of 1997, Herman Merinoff, the majority shareholder, offered to purchase Mrs. Goldring's shares for $45.83 per share.

28.     Mrs. Goldring expressed no interest in selling her shares for the price Merinoff was offering.  In fact, Mrs. Goldring stated that the price was so low, that she would purchase the entirety of Sunbelt stock that she did not already own at the same per-share price as proposed by Merinoff.

29.     In August 1997, Sunbelt's board of directors authorized Sunbelt's officers to obtain a fairness opinion for the $45.83 per-share price offered to purchase Mrs. Goldring's stock.

30.     On August 18, 1997, Sunbelt's Board of Directors authorized a "call" on Mrs. Goldring's shares to purchase the shares at $45.83 as of July 31, 1997 (the "Call").  The board of directors also authorized a squeeze-out merger at the same price (the "Merger").

31.     The squeeze-out merger was implemented on August 22, 1997.   No money was paid or tendered to Mrs. Goldring for her shares at that time.

DOCSBHM\2215546\5

B.    *Litigation Over the Squeeze-Out Merger*

32.    In December 1997, Mrs. Goldring filed an appraisal action in the Delaware Chancery Court seeking a determination of the fair value of her shares that were taken as a result of the squeeze-out merger (the "Appraisal Action").

33.    In August 1999, Mrs. Goldring filed a Breach of Fiduciary Duty Action against Sunbelt and the officers of Sunbelt (the "Breach of Fiduciary Duty Action").  The two suits were consolidated and will be referred to herein as the "Sunbelt Litigation."

34.    In the Sunbelt Litigation, Mrs. Goldring requested a rescission of the Merger and rescissory damages in the form of the stock she previously held.

35.    In the summer of 1999, the United States District Court of the Southern District of New York issued an order compelling Sunbelt and Mrs. Goldring to participate in arbitration pursuant to the stock purchase agreement entered into between Mrs. Goldring and Sunbelt in 1994.  The Sunbelt Litigation was stayed pending the result of the arbitration.

36.    In December 2001, the arbitration panel concluded that the Call and the Merger were attempts to eliminate Mrs. Goldring as a minority shareholder without notice and without legal justification and to obtain her stock at a formula price.  The panel further determined that the Call was neither valid nor supported in law or fact.  The panel found that there was "no persuasive evidence that Mrs. Goldring had ever promised she would relinquish her shares to Merinoff upon request, at the WPG Formula price or any other price."  (Ex. A at 10)

37.    Following the decision by the arbitration panel, the Delaware Chancery Court resumed the Sunbelt Litigation.  A three day trial was held in April 2009.

C.      *Decision by Delaware Chancery Court*

38.     On January 5, 2010, the Delaware Chancery Court (the "Court") issued its Memorandum Opinion.  The decision was revised on February 15, 2010 to clarify certain aspects of the original decision (the "Revised Opinion").

39.     In reaching its decision, the Court made several findings that Mrs. Goldring intended to hold the Sunbelt stock as a long-term investment and had no intention of selling the stock in 1997.

40.     The Court further concluded that Sunbelt and its directors breached their fiduciary duty by essentially stealing Mrs. Goldring's stock.

D.  *Fashioning a Remedy for Mrs. Goldring*

41.     After determining that the process by which Mrs. Goldring's shares were taken was unfair and lacked any procedural safeguards, the Court was faced with the challenge of fashioning a remedy to make Mrs. Goldring whole for her 15% interest in Sunbelt.

42.     The Court considered the expert opinions offered by both parties as to the value of the stock at the time of the Merger, and determined that the fair value of the stock at the time of the Merger was $114.04 per share, or more than double what Sunbelt intended to pay Mrs. Goldring under the Call and Merger.  (Ex. A at 38).

43.     The Court awarded monetary damages to Mrs. Goldring rather than the rescissory relief requested by Mrs. Goldring. The Court observed that such monetary award "will fully and *fairly* compensate Goldring, and suffers from none of the practical problems that afflict Goldring's proposed rescission remedy."  (Ex. A at 38)(emphasis added).

44.     The Court explained that the determination of rescissory damages would be unnecessarily complicated.  "The rescissory damages Goldring requests would require the Court to carve out approximately 15% of Sunbelt's distribution portfolio to reflect the 15% stake

7

Goldring held in Sunbelt at the time of the Merger. . . .   Any such award would present significant issues related to complexity and implementation, not the least of which would find the Court engaged in another valuation analysis. . . .   Simply put, Sunbelt and its business portfolio are too complex to unscramble . . .   Here, given practical difficulties in crafting rescissory relief and the fact that $114.04 per share in money damages is clearly ***adequate substitute remedy***, I decline to award rescissory damages."  (Ex. A at 38-39)(emphasis added).

45.     Consistent with the Court's decision, the parties calculated the total amount of damages awarded and owed to Mrs. Goldring.  The agreed-upon amount of award was outlined in the Forbearance Agreement, entered into by the parties on March 12, 2010.

### E.  Payment of the Court's Award

46.     In April 2010, the Court entered a judgment requiring Sunbelt to pay Mrs. Goldring the monetary damages computed and agreed-upon in the Forbearance Agreement.

47.     On April 5, 2010, pursuant to the Court's judgment, Sunbelt paid $40,789,124.50 to Mrs. Goldring.

48.     Upon receipt of the $40,789,124.50 judgment from Sunbelt, Mrs. Goldring surrendered her stock certificates.

49.     Thereafter, Sunbelt issued Mrs. Goldring a Form 1099-MISC, which purported to reflect a payment of $14,536,383.28 for the shares of stock, and a Form 1099-INT, which purported to reflect an interest payment of $26,252,741.22[2]

50.     At no time between August 1997 and April 2010 did Mrs. Goldring make a loan to Sunbelt.

---

[2] Clearly, Sunbelt issued the 1099-MISC in this self-serving fashion in order to attempt to avail itself of an interest deduction.  However, the Tax Court and other courts have consistently held that amounts denominated as "interest" that are required to be paid by a company as a result of stock-fraud litigation ***are not*** deductible interest expenses. Any claimed deduction by Sunbelt of the "interest" portion of the payment was legally improper.

51.     The Goldrings reported the full amount of the payment from Sunbelt as income from the sale or exchange of a capital asset; specifically, the sale of the 120,000 shares of Sunbelt stock.

## COUNT I
## Capital Gain Treatment of Sunbelt's 2010 Payment

52.     Plaintiffs incorporate by reference paragraphs 1 through 51.

53.     Mrs. Goldring's shares in Sunbelt are a capital asset under I.R.C. § 1221(a)(1).

54.     Gain from the "sale or exchange of a capital asset held for more than 1 year" is defined by the Code as "Long-Term Capital Gain."  I.R.C. § 1222(3).  Net long-term capital gain is taxed at a lower federal income tax rate.  I.R.C. § 1(h).

55.     The tax treatment of litigation proceeds is determined based on the "origin of the claim." *Woodward v. Comm'r*, 297 U.S. 572 (1969).

56.     In the Sunbelt Litigation, Mrs. Goldring sued to have her 15% interest in Sunbelt be reinstated, or, alternatively, to receive full payment for the value of her Sunbelt shares.

57.     The $40,789,124.50 payment received by Mrs. Goldring in 2010 was made in exchange for her shares of Sunbelt stock at that time (*i.e.,* in 2010).  Therefore, the full payment is "long-term capital gain" as that term is defined by the Code and should be taxed at the long term capital gain rate.

58.     Sunbelt's reporting of a portion of that payment as "interest" (*i.e*., $26,252,741) was legally improper and inconsistent with the Code and the "origin of the claim" doctrine.

59.     Plaintiffs are entitled to treat the full $40,789,124.50 paid by Sunbelt to Mrs. Goldring as long term capital gain.  As a result, Plaintiffs overpaid their taxes for the 2010 Tax Year by $5,250,549.

DOCSBHM\2215546\5

60.     Plaintiffs are entitled to a refund of taxes in the amount of $5,250,549 for the 2010 Tax Year plus interest and costs.

61.     Plaintiffs are further entitled to a refund of all deficiency interest paid for the 2010 Tax Year.

## COUNT II

### Erroneous Interest Assessment

62.     Plaintiffs incorporate by reference paragraphs 1 through 61.

63.     The IRS erroneously assessed interest on the deficiency it ultimately determined in March 2017 for the 2010 Tax Year.  Plaintiffs paid the full amount of taxes assessed by the IRS for the 2010 Tax Year on or before the date such taxes were due by submitting an overpayment with their 2010 return. There was no deficiency. Therefore, interest was not properly charged against the purported deficiency.

64.     The overpayment of $6,782,794 that was paid with the 2010 return was credited to the Plaintiffs' accounts for future tax years, but was never applied to offset any liability for a federal income tax obligation for any other tax year.

65.     Pursuant to *Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir. 1978), the IRS cannot charge interest on a tax deficiency if the IRS has the money in its possession and the funds are not being applied to offset a liability or obligation for a different tax year.

66.     Because the IRS had funds in its possession to fully satisfy the deficiency for the Goldrings' tax obligations for 2010 Tax Year up until the additional taxes were assessed in 2017, and those funds were not applied to satisfy the tax liability of any subsequent year, the IRS may not charge interest on the purported underpayment related to the asserted deficiency determined in 2017.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully demand (I) judgment in the amount of the Second Refund Claim, plus interest and costs allowed by law; (II) a declaration that the full amount of the payment by Sunbelt to Mrs. Goldring in 2010 is treated as long-term capital gain for tax purposes, (III) a declaration that Plaintiffs are not liable for deficiency interest because all funds were in the possession of the IRS from the time such taxes were due, and (IV) such other relief as the Court may deem just, including the reasonable litigation costs incurred in this proceeding, under 26 U.S.C. § 7430 or any other applicable provision.

/s/Harry Rosenberg
HARRY ROSENBERG
Louisiana Bar No. 11465
Phelps Dunbar, LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130
(504) 583-9219
***Attorney for Plaintiffs***
***William and Jane Goldring***

OF COUNSEL:
David M. Wooldridge, Esq.
Gregory Rhodes
Michelle Abroms Levin
SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel:    (205) 930-5219 (Wooldridge)
         (256) 518-3605 (Levin)
         (205) 930-5445 (Rhodes)
Fax:    (205) 212-3814

(Application for Pro Hac Vice Pending)

DOCSBHM\2215546\5