UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM GOLDRING AND JANE GOLDRING** | **CIVIL ACTION** |
| | **NO: 18-10756** |
| **VS.** | |
| | **SECTION: T** |
| **UNITED STATES OF AMERICA** | |

## ORDER

Before the Court is a Second Motion for Summary Judgment[1] filed by William Goldring and Jane Golding. The United States of America has also filed a Second Motion for Summary Judgment.[2] For the following reasons, the Second Motion for Summary Judgment[3] filed by William Goldring and Jane Golding is **DENIED** and the Second Motion for Summary Judgment[4] filed by the United States of America is **GRANTED.**

## BACKGROUND

On April 13, 2020, the Court issued an order granting the first Motion for Summary Judgment by the United States of America finding that the $26,252,741.22 disputed amount (the "Disputed Amount") is properly classified as interest, rather than as a payment in exchange for a capital asset, and should, therefore, be taxed as gross income. The parties now move for summary judgment regarding whether the Internal Revenue Service ("IRS") properly assessed interest in the amount of $603,335 on the Goldrings' underpayment for the tax year of 2010.

William Goldring and Jane Golding claim that the IRS improperly assessed interest against them for 2010 because the IRS possessed and controlled funds in a sufficient amount that

---

[1] R. Doc. 59.
[2] R. Doc. 60.
[3] R. Doc. 59.
[4] R. Doc. 60.

satisfied their underpayment of tax for 2010 and suspended the running of interest on their underpayment from April 15, 2011 (the due date of the Goldrings' 2010 return) through August 18, 2017 (the date of the IRS assessment). The Goldings contend that they reasonably believed that the Disputed Amount was properly characterized as capital gain but recognized that the IRS might take the position that it was ordinary income. In order to avoid potential interest charges in the event their reporting position was determined incorrect, the Goldrings' accountants advised them to prepay amounts to the IRS that would cover any potential underpayment. The Goldrings paid in excess of the full amount of the potential underpayment, $5,250,549, with their 2010 tax return and elected to carry forward this amount in each subsequent tax year. The Goldrings continued to make such credit elections and maintained excess payments and deposits with the IRS between 2010 and 2016 in amounts exceeding their then-current year tax liabilities and any potential underpayment attributable to a recharacterization of the Disputed Amount.

The government contends that the IRS did not possess or exercise unfettered control over the Goldrings' overpayment arising in 2010, as they contend, based on the application of the specific statutory and regulatory rules in this case. Because the Goldrings' 2010 return elected to apply the entire overpayment arising from 2010 to their estimated income taxes for 2011, payment of the Goldrings' estimated taxes for 2011, by and through application of their credit elect overpayment from 2010, was deemed paid on April 15, 2012 (the due date of their 2011 return). Upon payment of the Goldrings' 2011 estimated tax, the credit elect overpayment left their tax account for 2010 and moved into their tax account for 2011. At that point, the government contends, the overpayment was no longer available for offset against their underpayment of tax for 2010, and therefore, did not suspend the running of interest on that underpayment from April 16, 2012, until paid.

## LAW AND ANALYSIS

Section 6601(a) of the Internal Revenue Code provides that if any amount of tax is not paid on or before the last date prescribed for payment, interest shall be paid on the amount of the underpayment for the period from such last date to the date paid.[5] Section 6402(a) of the Internal Revenue Code and related Treasury regulations authorize the IRS to credit the amount of any overpayment of tax, including any interest allowed thereon, against any outstanding liability in respect of an internal revenue tax owed by the person making the overpayment, and refund any balance of said overpayment to such person.[6]

To implement and administer the statute, 26 U.S.C. § 6402(a), Congress authorized the Secretary of Treasury to prescribe regulations "providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year."[7] Thus, a taxpayer that reports an overpayment of income tax on his return may request a refund of the overpayment, or alternatively, elect to have the overpayment applied to his estimated income tax for the following tax year (referred to as a "credit elect overpayment" or "credit elect").[8] If a taxpayer elects to apply all or part of an overpayment shown on his return to his estimated income tax for the succeeding tax year, no interest shall be allowed on the portion of the overpayment credited, and the amount of the credit shall be applied as a payment on account of the estimated income tax for such succeeding year or the installments thereof.[9]

---

[5] See 26 U.S.C. § 6601(a); 26 C.F.R. § 301.6601-1(a)(1).
[6] See 26 U.S.C. § 6402(a), 26 C.F.R. § 301.6402-1.
[7] See 26 U.S.C. § 6402(b).
[8] See e.g., 26 U.S.C. §§ 6402(a), (b); 26 C.F.R. §§ 301.6402-1 and 301.6402-3(a)(5).
[9] See 26 C.F.R. § 301.6402-3(a)(5).

A taxpayer's election to apply an overpayment of tax shown on his return to his estimated tax for the succeeding tax year is irrevocable and binding on both him and the IRS.[10] 26 U.S.C. § 6513(d) provides:

> If any overpayment of income tax is, in accordance with section 6402(b), claimed as a credit against estimated tax for the succeeding taxable year, such amount shall be considered as a payment of the income tax for the succeeding taxable year . . . , and no claim for credit or refund of such overpayment shall be allowed for the taxable year in which the overpayment arises.

Once the taxpayer makes an election to apply an overpayment to the next year, the IRS cannot offset the overpayment against any additional tax for the year the overpayment arose.[11]

In this case, the Goldrings have failed to establish that the IRS erroneously assessed interest on their underpayment of tax for 2010 on the grounds that the IRS possessed and controlled funds from overpayments arising in subsequent tax years that were sufficient in amount to satisfy their 2010 tax assessment and suspend the running of interest on the assessment from April 15, 2011, until paid. Because the Goldrings elected to apply their reported overpayment arising from 2010 to their estimated income taxes for 2011, the overpayment was no longer available to offset their underpayment of tax for 2010 and, as a result, could no longer suspend the running of interest on their 2010 tax deficiency beginning on April 16, 2012, and ending on April 15, 2017.  Therefore, the undisputed material facts show that the IRS properly assessed interest on the Goldrings' underpayment of tax for the period covering April 16, 2012 through April 15, 2017, and the Goldrings are not entitled to a refund for that year. Accordingly, the United States is entitled to summary judgment as a matter of law.

---

[10] See 26 U.S.C. § 6513(d).
[11] See Rev. Rul. 77-339, 1977-2 C.B. 475, 1977 WL 43855 (1977); Rev. Rul. 55-448, 1955-2 C.B. 595, 1955 WL 9450 (1955).

## **CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the Second Motion for Summary Judgment[12] filed by William Goldring and Jane Golding is **DENIED** and the Second Motion for Summary Judgment[13] filed by the United States of America is **GRANTED.**

**New Orleans, Louisiana**, on this 28th day of September, 2020.

                                                 **GREG GERARD GUIDRY**
                                             **UNITED STATES DISTRICT JUDGE**

---

[12] R. Doc. 59.
[13] R. Doc. 60.